# IN RE TAXES EWA PLANTATION COMPANY, LIMITED.

## No. 1846.

ARGUED NOVEMBER 20, 1928.    DECIDED FEBRUARY 1, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

The Ewa Plantation Company, Limited, returned its property for taxation as of January 1, 1927, at a valuation of $5,900,000. The tax assessor assessed the property at $6,735,455. The tax appeal court rendered a decision valuing the property at $7,343,355.76. The taxpayer now claims that the true value of the property on the assessment date was $4,264,706. The present appeal from the tax court is by the taxpayer.

As just held in the tax case of the Waialua Agricultural Company, Limited, *ante* p. 755, the return and the assessment take the place of pleadings and the valuation to be judicially fixed must be not less than the return nor more than the assessment. The tax appeal court erred in fixing the valuation at more than the amount of the assessment. On the other hand, the present claim of the taxpayer that the true value is less than the amount returned, even if sustained by this court, cannot avail in securing a tax valuation for the year under consideration less than the amount of the return.

In 1923 this corporation was taxed on a valuation of $7,000,000; in 1924 on a valuation of $8,000,000; in 1925

on a valuation of $7,200,000; and in 1926 on a valuation of $6,500,000. While these figures were, perhaps, arrived at by compromises and without judicial contests, they are nevertheless worthy of being mentioned.

Some of the principles applicable in cases of this nature are stated in the opinion just filed in the case of the Waialua Agricultural Company, Limited, *ante* p. 755. That statement need not be here repeated.

The lands used by this taxpayer in the production of sugar are not owned by it in fee simple. They are all held under a lease which expires thirteen years after the assessment date. It may be added at this point, on the subject of depreciation, that depreciation is chargeable out of gross income, even with reference to pieces of machinery and other equipment which, due to the approaching termination of the lease, may not be replaced. The original cost of such equipment is a real part of the cost of production of the sugar and a yearly proportional charge by way of depreciation can properly be made from year to year out of income to compensate in the end for the total expenditure made in acquiring that equipment.

It is not claimed in this case, as it was in the Waialua case, that inadequate depreciation had been charged on the books of the company in the recent past and it appears from the evidence in this case, as it did in that, that the depreciation charged, whether originally or by amendment, was in accordance with correct principles. Elaborate schedules have been presented in evidence by the taxpayer in this case, showing the experience of this corporation in the past in the matter of production and the cost thereof, gross income and net profits and containing also the estimates of the taxpayer covering the same subjects for the future. The figures of the past are not disputed by the assessor, although the correctness of some of the principles applied is questioned. Using undisputed

figures furnished by the taxpayer, the application of the stock market method would result as follows:

| | |
|---|---|
| 250,000 shares @ $44., | $11,000,000.00 |
| Less 10%, | 1,100,000.00 |
| | 9,900,000.00 |
| Add liabilities, | 441,490.18 |
| | 10,341,490.18 |
| Less value of non-taxables, | 5,401,784.00 |
| Market value of taxable assets, | $ 4,939,706.18 |

From a stock sales sheet showing the prices day by day obtained on the market for the stock of this corporation, which sheet was filed in this court by consent of both parties, it appears that on December 31, 1926, the day next preceding the assessment date, the selling price was $44. That is the price used in the above computation. That which is sought in each tax case is the value of the property on the assessment date. Since the assessment date is always a public holiday and no business is transacted on that day, the price which prevailed on the next preceding day should ordinarily be used in this method of computation, unless some good reason appears to the contrary, as for example, very unusual conditions affecting the market or affecting the particular sale or sales recorded on that day. An average of the prices obtained during the preceding calendar year does not, it seems to us, ordinarily furnish a correct indication of what the market value of the stock was on the assessment date.

In connection with the method of the capitalization of profits and in determining thereunder the prospective profit-producing capacity of the enterprise, we deem it safer in this case, as we did in the Waialua case, to rely

upon the experience of the recent past, rather than upon estimates of acres to be planted, tonnage to be produced, prices to be obtained and expenses to be incurred for the future. As in the other case, the capacity of the plantation in acreage planted and tonnage produced seems to be clearly settled. There are no prospects of radical changes with reference to the production or the cost thereof. Owing to the decreasing length of the lease and the uncertainty of obtaining a renewal, immediate expenditures in the way of replacements or of improvements will doubtless be made only in cases of absolute necessity and with growing caution. A lessee situated as this one is will, at least after the passage of a few more years, feel compelled not to be too liberal in these respects. The tonnage to be produced will probably vary within narrow limits in the future, as it has to some extent in the past. The price of sugar, also, is almost certain to vary from year to year. We prefer to rely upon the net results of the recent past, always in a spirit of considerable conservatism, in endeavoring to ascertain what the probable profits of the future will be. Absolute exactness in figures leading to valuations and in the ultimate valuations themselves is not ordinarily attainable. Reasonable men may well differ in these prognostications. The court can only use its best judgment in each case as it arises, although applying always the same fundamental principles.

From the evidence adduced it appears that the net profits of the corporation from taxables for 1926 were $930,869; for 1925, $966,900; for 1924, $1,813,677; for 1923, $1,071,189; and that the net profits from all property for the year 1922 were $1,383,602. The year 1924 is regarded by both parties to this controversy as a year of abnormal profits. It is contended by the taxpayer that the profits of 1925 and 1926 cannot be relied upon for the future, the main, if not the sole, reason given being that

unusual climatic conditions obtained in those two years, which tended to greatly increase the sucrose contents of the cane. The only witness, however, with practical experience in the field, who testified on that subject attributed those unusual climatic conditions and sucrose content only to the year 1925, not to the year 1926. The profits for 1926 were only a little less, as appears above, than those for 1925. Varying circumstances, of course, attend and affect the production of cane and of sugar on the same plantations at different periods. Some of them tend towards higher profits in one year and others towards lower profits. In another year the operation of these causes may result somewhat differently. The average net profit for 1925 and 1926 was $948,884. If the profits for 1924 are regarded as abnormal and if a normal profit for the year 1924 be deemed to be only as much as the plantation produced in 1923, the average of the net profits for the four years (1923, 1924, 1925, 1926) would be $1,010,036. Taking the same four years, plus the profits from all property for 1922, $1,383,602, less an approximate deduction for that year of $300,000, which seems to be required by the comparison of net profits from all property and net profits from taxables only in other years,—adding therefore for 1922 a net profit from taxables of $1,083,602, the average net profit from taxables for the five years would be $1,024,749. In this latter calculation the year 1924 is credited as above with only $1,071,189, as in the case of 1923.

The rate of capitalization is, of course, important. It is contended by the taxpayer, and we think correctly, that in this instance what purchasers of Ewa Plantation buy is in reality the right to receive the net profits of the plantation for the remaining thirteen years of the lease. (This omits from consideration, a procedure favorable to the taxpayer in this case, the possibility of the acquisition

by the corporation of a renewal of the lease on fair terms.) It is also contended by the taxpayer that in consonance with this view the correct value of the taxable property of the corporation will consist of the present worth of the right to receive annually the probable profits of the plantation for thirteen years, discounted at $12\frac{1}{2}\%$, that being the rate of capitalization usually employed in the past by this court in cases of plantations which own their lands in fee simple and are otherwise situated under favorable circumstances. By a less circuitous route, the method thus contended for is the equivalent arithmetically of employing a capitalization rate of a little less than 16%, to-wit, .1595. The formula for ascertaining the present worth of the right to receive annually $1 for thirteen years, discounted at $12\frac{1}{2}\%$, is, omitting intermediate steps, to multiply $1 by 6.26976. Practically the same result is obtained by dividing $1 by .1595 or, to be a little more nearly exact, .15949. Sustaining, therefore, the view contended for by the taxpayer as to the method of ascertainment of the present worth of the right of a purchaser of the plantation to acquire its probable annual profits for the remainder of its present lease, it appears definitely in this case that the rate of capitalization should be, not 18% as suggested by the tax assessor at the trial, but a little less than 16% as above stated.

Capitalizing the probable average profits of $948,884 at .1595, a valuation of $5,949,116 is reached. If the average annual profits be regarded as the next higher figure above noted of $1,010,036, the capitalization at the same rate of .1595 will show a value of $6,332,514.

In taxpayer's exhibit 15, being its application of the capitalization of profits method, "land rent previously deducted" of $145,851.70 is added to net profits otherwise estimated by it and is included as a part of the "total profit" of $918,444.70, which it submits by that schedule

is the correct average annual profit to be capitalized for the future. From a capitalization thus arrived at of $5,758,428, the taxpayer, in the same schedule, then deducts $1,494,655 as the "amount assessed direct to lessors" and claimed to represent the value of the same land for which the "rent previously deducted" was paid. In that schedule it is the present value of $918,444.70 for thirteen years at $12\frac{1}{2}\%$ which is ascertained and set forth. Following the decision in the Waialua case (*ante* p. 755) this amount of $145,851.70 paid by the taxpayer as rent for land owned by some one else is not properly to be included as a part of the profits of the taxpayer to be capitalized, even though thereafter the "amount assessed direct to lessors" for the same land is deducted. The statute (R. L. 1925, Sec. 1320) does require the inclusion of "all property combined and forming the basis of such enterprise", but that means the inclusion of such property only as belongs to the particular taxpayer under consideration. It does not require or permit the inclusion of property not owned by the taxpayer. The land referred to in schedule 15 was not owned by the taxpayer. The rent paid for it was not in any correct sense income which could throw any light upon the value of any property which did belong to the taxpayer. It was income which would tend to throw light on the value of the land producing that rent whenever the taxation of that land to its owner should come under consideration.

It is to be observed that incorrect results, for another reason, followed from the method adopted in schedule 15 of including the land rent in the earlier part of the schedule and deducting the value of the land in a later part of the schedule. The land rent of $145,851.70, treated as it was in the schedule, was in reality capitalized at $914,424. In other words, it was treated as contributing to the enterprise a capital value of $914,424, but, when subtracting

the value of the same land because not owned by the enterprise, the deduction was of \$1,494,655, or \$580,231 more than the value assumed in the earlier part of the schedule. When it is proper, as it is not in this instance, to first include income from non-taxables in the profits of the corporation and then to deduct the value of the same non-taxables, the capitalization of that part of the income in the earlier part of the schedule should be necessarily at such a rate as to produce the same value for the land as that which is deducted below. Otherwise one party or the other to the controversy suffers from the computation.

Under all of the circumstances, giving some effect to each of the above calculations and appreciating that absolute exactness is not attainable, we fix the value of the taxable property of this enterprise for the assessment date in question at \$6,000,000. Decree accordingly.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for the taxpayer.

*Marguerite K. Ashford* (*Thompson, Cathcart, Beebe & Winn* with her on the brief) for the assessor.